**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------

In re

       Calpine Corporation, et al.,

                             Debtors.

Chapter 11

Case No. 05-60200 (BRL)

Jointly Administered

----------------------------------------------------------

Rosetta Resources Operating LP,
Calpine Corporation, et al.,
                      Plaintiffs,

        v.

Pogo Producing Company,
                      Defendant

Adv. Pro. No. 06-1757
(BRL)

----------------------------------------------------------

KIRKLAND & ELLIS LLP
Attorneys for the Debtors,
Calpine Corp, et al.
153 East 53rd Street
New York, New York 10022
BY:   David R. Seligman, Esq.
        Jeffrey Powell, Esq.
        Christopher Keegan, Esq.

MAYER BROWN ROWE & MAW LLP
Attorneys for Rosetta Resources, Inc.
700 Louisana Street
Houston, Texas 77002
BY:   Charles S. Kelly, Esq.
        Hutson Smelley, Esq.

BURLESON COOKE L.L.P.
Attorneys for Pogo Producing Company
711 Louisiana Street
Houston, Texas 77002
BY:   Thomas S. Henderson, Esq.

KLESTADT & WINTERS LLP
Attorneys for Pogo Producing Company

292 Madison Avenue
New York, New York 10017
BY:    John E. Jureller, Jr., Esq.

Before:  Hon. Burton R. Lifland
         United States Bankruptcy Judge

## MEMORANDUM DECISION STAYING LITIGATION

Before the Court are three motions.  The Calpine Corporation ("Calpine") and several of its affiliates (together with Calpine, the "Debtors") and Rosetta Resources Operating LP ("Rosetta") have both filed motions to extend the automatic stay to an arbitration proceeding against Rosetta ("Extend Stay Motions") pursuant to Section 362 of Title 11 of the United States Code (the "Bankruptcy Code"), or, in the alternative, an injunction staying the arbitration proceeding pursuant to Section 105 of the Bankruptcy Code.  Pogo Producing Company ("Pogo") opposes the Extend Stay Motions and has filed a motion to lift the automatic stay ("Lift Stay Motion").  The Creditors Committee supports the Extend Stay Motions.  The Debtors, Rosetta, and the Creditors Committee oppose the Lift Stay Motion.

**BACKGROUND**

On August 20, 2004, Calpine and Calpine Natural Gas LP ("Calpine NG") (collectively "Seller") entered into a purchase and sale agreement (the "Pogo PSA") with Pogo. Pursuant to the Pogo PSA, Seller conveyed to Pogo certain oil and gas properties located in New Mexico for which Pogo paid Seller approximately $83 million. The Pogo PSA provided a mechanism for addressing defects in title including a resolution of any

2

disputes under the agreement by binding arbitration. Pogo provided notice to Seller by the required date, claiming a defect in title to the conveyed properties.

By agreement dated July 5, 2005 (the "Rosetta PSA"), Calpine entered into a series of transactions whereby it conveyed substantially all of its oil and gas properties to entities formed by, or sold to, Rosetta Resources, Inc., an entity formed by the officers of Calpine Corporation who had managed its oil and gas operations. The Rosetta PSA provided for the indemnification of Rosetta Resources, Inc. and its subsidiaries by Calpine for certain liabilities or potential liabilities, including the asserted claim of Pogo for the title indemnity payment. As a result of the Rosetta PSA, Calpine NG was sold to Rosetta Resources, Inc. and became Rosetta Resources Operating LP. Rosetta is not a bankrupt entity, but filed the adversary proceeding in the Debtors' cases.

In the period following the delivery of notice of Pogo's disputes, the parties engaged in negotiations, and agreed to submit the matter to mediation in December 2005. Mediation efforts were abandoned prior to Calpine commencing its Chapter 11 case. In April 2006, Pogo commenced arbitration proceedings against only Rosetta, seeking a title indemnity payment (exclusive of accruing interest, arbitration costs and attorney's fees) of $2,284,546.00 (the "Arbitration"). Pogo also filed a proof of claim against the Debtors for the title indemnity payment in the amount of $2,448,371.32, including interest accrued.

Rosetta filed a series of claims against Calpine and a number of Calpine-related debtors

3

in the amount of $27,878,175.36, including an unliquidated claim for indemnity under the Rosetta PSA for Pogo's title indemnity claim. Rosetta stated, on the record at the hearing held April 24, 2007 (the "Hearing") that it holds approximately $80 million owed to Calpine, against which it intends to assert setoff rights to any amounts Calpine owes to Rosetta including title indemnity and attorneys fees.

Rosetta filed the complaint seeking an order declaring that the automatic stay extends to the Arbitration pursuant to sections 362(a)(1), 362(a)(3) and 105 of the Bankruptcy Code and the Debtors intervened. Pogo filed a motion to dismiss the complaint and the intervention complaint. The motion to dismiss was denied by order of this Court dated January 3, 2007. *Rosetta Resources Inc. and Calpine Corp. v. Pogo Producing Company*, 2007 WL 39124 (Bankr. S.D.N.Y. January 3, 2007)

**DISCUSSION**

Section 105(a) of the Bankruptcy Code authorizes courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of " the Bankruptcy Code. 11 U.S.C. § 105(a); *In re Myerson & Kuhn*, 121 B.R. 145 (Bankr. S.D.N.Y. 1990). Bankruptcy courts may extend the automatic stay to "enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts," *see In re Adelphia Communications Corp.* 298 B.R. 49, 54 (S.D.N.Y. 2003) *quoting In re Granite Partners, L.P.,* 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996). Section 105 injunctions are granted in circumstances such as these because one of the overriding purposes of the Bankruptcy Code is to provide debtors with breathing room from their

4

creditors to increase the chances of a successful reorganization.[1] Because non-debtors do not fall within the protection of the automatic stay, at times section 105 must be invoked on their behalf to prevent creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them. In other words, "Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *In re United Health Care Organization,* 210 B.R. at 233 *quoting Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.,* 945 F. Supp. 603, 608 (S.D.N.Y.1996). The debtor bears the burden of demonstrating that circumstances warrant extending the stay. *In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y.1992).

A request by a debtor for an injunction under section 105(a) pending confirmation of a plan of reorganization is regarded as a request for a preliminary injunction. *See Hawaii Structural Ironworkers Pension Trust Fund v. Johnson* (*In re Calpine Corp.*), 2006 WL 3755175 (S.D.N.Y. Dec. 20, 2006). To obtain a preliminary injunction in a bankruptcy

---

[1] *See also Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) (affirming bankruptcy court's order extending stay to non-debtors because "it contributes to the debtor's efforts to achieve rehabilitation."); *MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 93 (2d Cir.1988); *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 328 F.Supp.2d 439, 441-442 (S.D.N.Y. 2004) (where a particular action against the non-debtor party threatens to adversely affect the debtor's reorganization efforts, courts are willing to extend section 362(a)'s coverage accordingly); *In re Chateaugay,* 93 B.R. 26, 30 (S.D.N.Y.1988) (acknowledging bankruptcy court's authority to extend a stay pursuant to its injunctive power under section 105, despite the inapplicability of the automatic stay provision under 11 U.S.C. § 362); *In re Neuman,* 71 B.R. 567, 571 (S.D.N.Y.1987) (same); *In re Ionosphere Clubs, Inc*. 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990), or when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *See Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir.2003); *In re Gucci,* 126 F.3d 380, 392 (2d Cir. 1997)("an action taken against a non-debtor which would inevitably have an adverse impact upon property of the estate must be barred by the automatic stay provision."); *see also A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876 (1986) (Section 362(a)(1) applies to non-bankruptcy parties "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment against the debtor); *In re W.R. Grace & Co.* 2004 WL 954772, 2 (Bankr. D. Del. April 29, 2004) ("the automatic stay has generally been extended to the unusual situation where an action against one party is essentially an action against the bankruptcy debtor, as in the case where a third-party is entitled to indemnification by the debtor for any judgment taken against it.").

5

proceeding, the moving party must demonstrate both irreparable harm and either a likelihood of success on the merits or a sufficiently serious question regarding the merits to make it a fair ground for litigation, with the balance of the hardships tipping decidedly in the movant's favor.  *See In re Alert Holdings, Inc. v. Interstate Protective Services,* 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) *citing Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir. 1989); *Kaplan v. Bd. of Educ.*, 759 F.2d 256, 259 (2d Cir. 1985); *Local 553, Transport Workers v. Eastern Air Lines, Inc.*, 695 F.2d 668, 675 n. 5 (2d Cir. 1982).

The case law in this district, however, has established a limited exception to the irreparable harm requirement for issuance of a preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to a case before it.  *Alert Holdings*, 148 B.R. at 199.  Where there is a showing that the action sought to be enjoined would burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief.  *Id.*  Additionally, the Southern District of New York District Court has enforced an injunction when there is a suit against a third party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against it in the case.  *In re United Health Care Org.*, 210 B.R. 228, 232 (S.D.N.Y. 1997).  *See also Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990).  Courts also apply section 105 of the Bankruptcy Code to enjoin litigation against non-debtors when an adverse judgment in

6

that litigation will collaterally estop the debtor in subsequent litigation.  *See Barney's, Inc. v. Isetan Co. (In re Barney's, Inc.*), 200 B.R. 527, 531 (Bankr. S.D.N.Y. 1996)*; In re Lion Capital Group*, 44 B.R. 690, 702-03 (Bankr. S.D.N.Y. 1984); *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.),* 26 B.R. 420, 429-30 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *rev'd in part on other grounds,* 41 B.R. 926 (S.D.N.Y. 1984); *see also In re Lomas Financial Corp.,* 117 B.R. at 66-67.

Taking into consideration the pleadings filed and the evidence put before the Court at the Hearing, it is clear that allowing the Arbitration to proceed would burden, delay and impede reorganization.  The Debtors and Rosetta have established that 1) adjudication of Rosetta's liability under the Pogo PSA may effectively be an adjudication of issues regarding the Debtors' liability without giving Calpine an opportunity to adequately defend itself; 2) if the Arbitration is allowed to go forward against and Rosetta and Rosetta is found liable in the Arbitration, the Debtors may be required to indemnify Rosetta for any judgment amount; and 3) the Debtors would have to expend time and energy responding to discovery and protecting their interests if the Arbitration were permitted to go forward.

This Court has held that a stay should be extended to third party defendants when the claims against co-defendants and the debtor are "inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding." *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990).  In this case, the facts relevant to the Arbitration are identical to the facts that would be relevant in determining

7

Calpine's liability to Rosetta.  Therefore, Calpine may suffer irreparable harm if the Arbitration continues through the risk of collateral estoppel and evidentiary prejudice. "If the arbitrators determine that the title to certain oil and gas leases were defective when transferred, Calpine …may in fact be barred by principles of collateral estoppel from litigating that issue in a later proceeding."  Pogo Opposition to Motion to Extend, at page 19.  If the Arbitration went forward without Calpine and Rosetta is found liable in the arbitration, Rosetta has indicated its intention to assert setoff rights against Debtors using the $80 million it is currently holding, essentially resulting in an allowed secured claim against the Debtors. On the other hand, Pogo filed a proof of claim against the Debtors, which, if Pogo liquidated its claim against the Debtor, would likely be classified as an unsecured claim.

Twice already in these cases, the Court has extended the automatic stay to apply to third parties and twice this Court has been affirmed by the District Court.  *See Nevada Power Company v. Calpine Corp. (In re Calpine Corp.)*, 2007 WL 950090, *5 (S.D.N.Y March 28, 2007); *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp. (In re Calpine Corp.)*, 2006 WL 3755175 (S.D.N.Y. Dec. 20, 2006).  In both circumstances, this Court based the decision, at least in part, on the burden that would be placed on the estate if an action involving third parties were to go forward.  In *Hawaii Structural Ironworkers Pension Trust Fund,* the District Court affirmed this Court's order extending the automatic stay because if the litigation involving third parties were to continue, the Debtor, regardless of not being named as an actual party, would be prudent to devote resources to assisting in the defense because of "potential impact upon a claim or suit

8

against the debtor." *See Hawaii Structural Ironworkers Pension Trust Fund,* 2006 WL 3755175, *5.

Likewise, in the case before the Court, the Debtors would likely be required to, and it would be sensible to devote resources to following the arbitration. The Debtors presented the testimony of Craig Chancellor, a Vice President of Gas Regulatory and Government Affairs. Mr. Chancellor testified that he and two other individuals in the legal and land management departments are currently devoting time to various aspects of the Debtors' reorganization and if the Arbitration went forward against Rosetta, they would all be required to spend time on the Arbitration instead of the reorganization. *See* Trans. 4/24/07 at pgs. 23-26. As counsel for Pogo pointed out, even the proceeding before this Court was a distraction for Mr. Chancellor as he was forced to devote hours of work for the Debtors to prevent the Arbitration from going forward. *See* Transcript 4/24/07 at pgs. 29-30.

The probability of success on the merits element of the test for granting a preliminary injunction to preserve the reorganization effort is generally recognized as involving an analysis of the likelihood that the Debtor will confirm a plan of reorganization. *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855 (6th Cir. 1992). There is really no dispute that there is a strong likelihood that the Debtors can successfully reorganize and this Court has already determined that in earlier adversary proceedings in this case. *See Nevada Power Company*, 2007 WL 950090, *5; *Hawaii Structural Ironworkers Pension Trust Fund,* 2006 WL 3755175, *6.

9

Moreover, the balance of the equities weigh decisively in Calpine's favor. The risk of collateral estoppel, depletion of estate assets and distraction of key employees to the urgent task of reorganization outweigh any purported prejudice to Pogo.[2] By contrast, a stay of the arbitration will neither diminish the potential liability of Calpine and Rosetta nor complicate Pogo's evidentiary burdens. As with all of the claims filed against the Debtors' estates, Pogo's claims will be dealt with in due course. Additionally, since the period of exclusivity expires during this coming summer, and the Debtors have indicated their expectation to submit a disclosure statement within the applicable time period and quickly move to the end of these cases, the prejudice to Pogo of waiting a few months to fully adjudicate this matter, rather than adjudicate now, against only Rosetta, is not substantial.

For same reasons as stated above, the Motion to Lift the Stay is denied.[3] *See Sonnax v. Tricomponent Product Corporation (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1995)

---

[2] Pogo cites issues with the Bureau of Land Management ("BLM") and the New Mexico Oil Conservation Division ("NMODC") as potential prejudice. Pogo claims that it is under pressure to either invest in or plug and abandon one of the wells at issue in the Arbitration but that it should not be forced to make that decision until the outcome of the Arbitration. However, the deadline that Pogo is under has been extended in the past and Pogo had no formal indication that it could not be extended past the current date, January 2008. *See* Transcript 4/24/07, at pg 61-62.

[3] At the Hearing, counsel for Pogo indicated that Pogo did not intend to pursue the Lift Stay Motion.

10

**CONCLUSION**

Accordingly, the Motions to Extend the Stay to apply to the arbitration are granted and the Motion to Lift the Stay is denied. The request for a preliminary injunction is granted and the injunction will remain effect until the earlier of 15 months or the effective date of a plan.

A SEPARATE ORDER WILL BE ENTERED.

Dated:  April 30, 2007
        New York, New York                    __/s/ Hon. Burton R. Lifland_____
                                              United States Bankruptcy Judge